**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, :<br>*ex rel.* :<br>: Civil Action No.:    03-2436 (RMU)<br>J. COOPER & ASSOCIATES, INC. :<br>: Document No.:        20<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>BERNARD HODES GROUP, INC., :<br>CASS COMMUNICATIONS, INC., and :<br>J. WALTER THOMPSON CO., :<br>:<br>Defendants. : | |

<u>MEMORANDUM OPINION</u>

GRANTING THE DEFENDANTS' MOTION TO DISMISS AND
FOR ATTORNEYS' FEES AND EXPENSES

**I. INTRODUCTION**

      This case comes before the court on the defendants' motion to dismiss and for attorneys' fees and expenses. The plaintiff alleges that the defendants misrepresented themselves as small or disadvantaged businesses in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, to obtain orders from the Immigration and Naturalization Service ("INS") for advertising and public relations services. Because the plaintiff's claims are based on publicly disclosed information, of which the plaintiff is not the original source, the court grants the defendants' motion to dismiss for lack of subject-matter jurisdiction. In addition, because the plaintiff's

1

lawsuit qualifies as frivolous and vexatious, the court awards the defendants attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4).

## II.  BACKGROUND

### A.  Factual Background

Plaintiff J. Cooper and Associates, Inc. is a small, disadvantaged vendor eligible to participate in the Small Business Administration's ("SBA") Section 8(a) program.[1]  Am. Compl. ¶ 3.  In July 1995, the INS awarded the plaintiff a contract under the Section 8(a) program to perform advertising and public relations services to support the INS's initiative to significantly increase the size of its workforce.  *Id.* ¶ 8; Defs.' Mot. at 4.  In November 1995, however, the INS began issuing orders to other vendors to fulfill its advertising needs.  Defs.' Mot. at 5-6.  Specifically, the INS placed advertising orders with defendants Bernard Hodes Group, Inc. ("Hodes") and Cass Communications, Inc. ("Cass") in November 1995, and with defendant J. Walter Thompson Co. ("JWT") in February 1996.[2]  *Id.* at 7.

On January 7, 1997, after the plaintiff's contract terminated, the plaintiff sent a letter to the United States Department of Justice's Office of the Inspector General ("OIG") stating that "several large white firms misrepresented themselves as being 'small and disadvantaged' in order to obtain contracts with the [INS]," and that, "this fraud took place with the INS' [sic.] contract

---

[1]  Under the Small Business Administration's ("SBA") Section 8(a) program, government agencies can award contracts to small businesses.  15 U.S.C. § 637(a)(1)(B).  The small business then enters into a tripartite contract with the contracting agency and the SBA and performs the specified work as a subcontractor to the SBA.  *Id.*

[2]  The INS also issued orders to another advertising agency, Abramson, Ehrlich, and Manes, which is not a party to this lawsuit.  Am. Compl. ¶ 13; Am. Compl., Attach. 2 at 6547.

and program people's knowledge."[3]  Defs.' Mot. at 6; Am. Compl. ¶ 9; Pl.'s Opp'n, Attach. 1 ("Cooper Decl."), Ex. L.

On August 7, 1997, the OIG issued a report ("the OIG Report") of an investigation regarding allegations that the INS "commingled advertising funds that were earmarked for a specific 8(a) or small and disadvantaged advertising contract."  Am. Compl. ¶ 12; Am. Compl., Attach. 2 at 6538; Defs.' Mot. at 10.  Attached to the OIG Report was a Memorandum of Investigation ("MOI") summarizing a July 15, 1997 interview with an INS employee discussing "allegations that certain businesses had received 'small business' status, when these companies did not meet the requirements as 'small businesses.'"  Defs.' Mot. at 10-11 (citing Am. Compl., Attach. 2 at 6546).  During the interview, the INS employee stated that each of the defendant vendors "verified their 'small business' status verbally" when questioned by the INS.  Am. Compl., Attach. 2 at 6547.

On December 8, 1997, the plaintiff filed suit in the United States Court of Federal Claims against the INS, alleging that the SBA and the INS violated their statutory and contractual obligations by discontinuing the contract with the plaintiff and issuing advertising orders related to the INS's hiring initiative to other businesses.  Am. Compl. ¶ 10; Defs.' Mot. at 8.  The Court of Federal Claims dismissed the suit without prejudice to allow the plaintiff to exhaust administrative remedies.  *J. Cooper & Assocs., Inc. v. United States*, 47 Fed. Cl. 280 (2000).  On May 31, 2000, the plaintiff filed another complaint against the INS for breach of contract and

---

[3]     The plaintiff sent a similar letter to the SBA on the same date.  Defs.' Mot. at 6; Am. Compl. ¶ 9; Pl.'s Opp'n, Attach. 1 ("Cooper Decl."), Ex. M.  The SBA informed the plaintiff by mail that it had referred the plaintiff's letter to the Department of Justice, Office of the Inspector General ("OIG") for review.  Am. Compl. ¶ 9.

breach of the implied covenant of good faith and fair dealing.  Am. Compl. ¶ 10.  The Court of Federal Claims dismissed the plaintiff's complaint with prejudice on July 12, 2002.  *J. Cooper & Assocs., Inc. v. United States*, 53 Fed. Cl. 8 (2000); Defs.' Mot. at 9.  The plaintiff appealed to the Court of Appeals for the Federal Circuit, which affirmed the lower court's decision.  *J. Cooper & Assocs., Inc. v. United States*, 2003 U.S. App. LEXIS 13088 (Fed. Cir. June 5, 2003).

### B. Procedural Background

Before ruling on the pending motion, the court takes a step back to review the somewhat tangled procedural posture of this case.  On November 25, 2003, the plaintiff filed this *qui tam*[4] lawsuit on behalf of the United States against the defendants.  Compl ¶¶ 1, 2.  On April 18, 2005, the defendants filed a motion to dismiss the complaint and for attorneys' fees, costs, and expenses.  Stipulation and Order Dismissing Pl.'s Unjust Enrichment Claim and Defining Papers to be Considered on Defs.' Mot. to Dismiss the Am. Compl. ("Stipulation") at 1.  On May 12, 2005, the plaintiff filed a brief and affidavit in opposition to the defendants' motion to dismiss, and subsequently filed an amended complaint which added, *inter alia*, a claim for unjust enrichment.  *Id.* at 1-2.  As a result of this filing, confusion arose among the parties regarding which motions and corresponding documents remained at issue.  To clarify for the court the relevant documents in resolving the defendants' motion to dismiss the amended complaint, the parties stipulated and agreed that: (1) the unjust enrichment count is dismissed with prejudice, (2) the defendants' motion to dismiss the original complaint is withdrawn, (3) the only motion

---

[4] A *qui tam* action "allow[s] private parties to initiate suit to enforce the laws in the government's stead and award[s] victorious plaintiffs part of the recovery as bounty."  *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 647 n.1 (D.C. Cir. 1994).

before the court is the defendants' motion to dismiss the amended complaint.[5]  *Id.* at 2-3.  The court now turns to the defendants' motion.

### III.  ANALYSIS

The defendants move to dismiss the plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot. at 1.  Courts should consider Rule 12(b)(1) jurisdictional challenges before Rule 12(b)(6) challenges.  *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993).  Accordingly, the court addresses the defendants' Rule 12(b)(1) challenge first.

### A.  Legal Standards

### 1.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we being, and end, with an examination of our jurisdiction").

---

[5]  The documents in docket entry number 20 are deemed to comprise the defendants' motion to dismiss the amended complaint.  Stipulation and Order Dismissing Pl.'s Unjust Enrichment Claim and Defining Papers to be Considered on Defs.' Mot. to Dismiss the Am. Compl. ("Stipulation") at 3.  The documents in docket entry number 18 comprise the plaintiff's papers in opposition to the defendants' motion to dismiss.  *Id.*  Finally, the defendants' reply to the plaintiff's opposition is docket entry number 23.  *Id.*

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. Of Ir., Ltd v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.  *United States ex rel. Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2. Legal Standard for the False Claims Act

The FCA imposes liability for civil penalties and treble damages on anyone who submits or causes false claims to be submitted to the federal government.  31 U.S.C. § 3729.  The FCA

defines "claim" to include a request for payment made to a contractor, grantee, or other recipient if the federal government provides any portion of the money or property that is requested or demanded, or if the federal government will reimburse such contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded.  31 U.S.C. § 3729(c). Further, the statute proscribes only false claims, that is, actual demands for money or property, and false records or statements used to induce such claims.  31 U.S.C. § 3729(a)(2).  The FCA attaches liability to the claim for payment, not to the underlying activity.  *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002).

In a *qui tam* lawsuit brought under the FCA, private persons acting on behalf of the government may sue those who defraud the government and may share in any proceeds ultimately recovered.  *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 647 (D.C. Cir. 1994).  *Qui tam* provisions thus create incentives to supplement government enforcement by exposing fraud of which the government was previously unaware.  *Id.* at 649; *United States ex rel. Findley v. F.P.C.-Boron Employees' Club*, 105 F.3d 675, 678 (D.C. Cir. 1997).

The FCA includes a jurisdictional provision barring certain types of suits, including *qui tam* suits that are "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news"[6] 31 U.S.C. § 3730(e); *see also*

---

[6] Congress included the public disclosure exemption in the 1986 amendments to the FCA in order "to ensure that *qui tam* actions would not be brought by 'concerned' citizens combing courthouse and agency records." *United States ex rel. Herbert v. Nat'l Acad. of Scis*, 1992 U.S. Dist. LEXIS 14063, at *11 (D.D.C. Sept. 15, 1992).

*Springfield*, 14 F.3d at 651.  A court, however, has jurisdiction to hear a suit based on the public disclosure of allegations or transactions if the plaintiff is the "original source" of the information, that is, if the plaintiff "has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B); *see also Springfield*, 14 F.3d at 651; *Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992).

Under the FCA, the plaintiff has the burden of establishing jurisdiction.  *United States ex rel. Herbert v. Nat'l Acad. of Scis.*, 1992 U.S. Dist. LEXIS 14063, at *9 (D.D.C. Sept. 15, 1992) (citing *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)), *aff'd*, 974 F.2d 192 (D.C. Cir. 1992).  In addition, the court has no duty to accept factual allegations as true, especially sweeping, conclusory statements.  *Id.* at *10 (citing *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986)).  This jurisdictional limitation represents Congress's effort to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own."  *Springfield*, 14 F.3d at 649.

### B. The Court Lacks Subject-Matter Jurisdiction

### 1. The Plaintiff's Claim is Based on Transactions and Allegations in Public Disclosures

The defendants argue that the plaintiff's suit is based on allegations that were publicly disclosed in the OIG Report.[7] Defs.' Mot. at 14. The OIG Report investigated allegations that some businesses received "small business" status when they did not meet the requirements of a small business. Am. Compl., Attach. 2 at 6546. The OIG's MOI then states that the defendants "verified their small business status verbally" when contacted by the INS. *Id.* at 6547. Because the plaintiff's suit alleges that the defendants were, in fact, not small business, the defendants argue that the plaintiff's suit is based on allegations contained in the OIG Report. Defs.' Mot. at 16.

The D.C. Circuit explained the significance of the terms "allegation" and "transaction" in the FCA's jurisdictional provision by using the following formula: X (misrepresented state of facts) + Y (true state of facts) = Z (fraud). *Springfield*, 14 F.3d at 654; *see also Findley*, 105 F.3d at 687. A *qui tam* action cannot proceed when "all the material elements of the fraudulent transaction are already in the public domain" (*i.e.*, X and Y are in the public domain), even if the plaintiff "comes forward with additional evidence incriminating the defendant." *Springfield*, 14

---

[7] The defendants argue, and the plaintiff does not dispute, that the OIG Report is a "public report" of an investigation that "falls squarely within the language and purpose of the term 'public disclosure' in the FCA's jurisdictional bar." Defs.' Mot. at 14; *see also* Defs.' Mot, Ex. R (explaining that "the Inspector General . . . enforces criminal and civil laws, regulations and ethical standards within DOJ by investigating individuals and organizations who allegedly are involved in financial, contractual or criminal misconduct in DOJ programs and operations").

F.3d at 655.[8] "However, where only one element of the fraudulent transaction is in the public domain (*e.g.,* X), the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (*e.g.*, Y) or allegations of fraud itself (*e.g.*, Z). *Springfield*, 14 F.3d at 655.

Contrary to the defendants' argument, the OIG Report's statement that the defendants verified their small business status verbally does not rise to the level of an "allegation" as defined by the D.C. Circuit. The statement constitutes only the misrepresented state of facts (*i.e.*, X) in the fraudulent transaction. *Springfield*, 14 F.3d at 654. In other words, the MOI standing alone is "innocuous" and does not "raise the specter of foul play." *Id.*; *Findley*, 105 F.3d at 687 (internal quotation marks omitted). The existence of the OIG Report in the public domain, therefore, does not divest the court of jurisdiction; theoretically, the plaintiff could still meet the jurisdictional requirement by offering information regarding the true state of facts (*i.e.*, Y) or an allegation of fraud itself (*i.e.*, Z). *Springfield*, 14 F.3d at 655.

The court, however, does not have jurisdiction to hear the present case because information revealing the true state of facts already exists in the public domain in another form. Specifically, media reports documenting the size and scope of the defendants' businesses existed long before the plaintiff filed its *qui tam* suit. *See, e.g.,* Defs.' Mot., Ex. S (Philip H. Dougherty, *2 Units to Merge At Doyle Dane*, N.Y. TIMES, Feb. 21, 1985 at D25) (reporting that Hodes joined a business with "$20 million in billings"); *Id.*, Ex. T (James L. Rowe Jr., *J. Walter Thompson*

---

[8] The rationale behind this limitation on *qui tam* suits is that, "when the publicly disclosed transaction is sufficient to raise the inference of fraud, there is 'little need for *qui tam* actions, which tend to be suits that the government presumably has chosen not to pursue or which might decrease the government's recovery in suits it has chosen to pursue.'" *United States ex rel. Findley v. F.P.C.-Boron Employees' Club*, 105 F.3d 675, 687 (D.C. Cir. 1997) (quoting *Springfield*, 14 F.3d at 654).


*Plans to Buy Hill & Knowlton*, WASH. POST, Feb. 11, 1980 at D7) (noting that JWT had "worldwide billings of nearly $1.5 billion in 1978"); *Id.*, Ex. W (*MorganWorks.com Appoints Four New Executives to Senior Management Team*, PR NEWSWIRE, March 30, 2000) (describing Cass as a "$30 million company"). The plaintiff's statement that each defendant is "a large business not entitled to any preference as a small business, or a small, disadvantaged business," Am. Compl. ¶ 2, merely "repeats what the public already knows," *Findley*, 105 F.3d at 683. Moreover, because the information disclosed in the OIG Report and the numerous media reports on the defendants would suffice to "set government investigators on the trail of fraud," there is little need for a *qui tam* lawsuit based on this set of facts.[9] *Springfield*, 14 F.3d at 655; *see also Settlemire*, 198 F.3d at 919 (advising that "there is no requirement . . . that the relevant public disclosures irrefutably prove a case of fraud. It is sufficient that the 'publicly disclosed transaction is sufficient to raise the inference of fraud'") (quoting *Findley*, 105 F.3d at 687); *Findley*, 105 F.3d at 688 (concluding that "[i]f a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed"). Having concluded that the plaintiff's claim is

---

[9] Indeed, there are several indications offered by the plaintiff itself that suggest that the Immigration and Naturalization Service ("INS") knew that the defendants were each large businesses. In January 1997, the plaintiff wrote to the OIG claiming that "several large white firms misrepresented themselves . . . with the INS' contract and program people's knowledge." Cooper Decl., Ex. L. Months later, in its suit against the INS, the plaintiff explicitly claimed that the INS knowingly issued contracts to "non-8(a) companies" and "improperly designated them as disadvantaged businesses" on various work orders. Defs.' Mot., Ex. D ¶ 26.

based on allegations in public disclosures,[10] the court now proceeds to the original source inquiry.

**2. The Plaintiff is Not an Original Source of Any Information Underlying the Allegation**

The defendants argue that the plaintiff did not have "first-hand knowledge of any of alleged misrepresentations." Defs.' Mot. at 17. The FCA requires a *qui tam* plaintiff to possess direct and independent knowledge of the "'information' underlying the allegation, rather than direct and independent knowledge of the 'transaction' itself." *Springfield*, 14 F.3d at 656. Accordingly, the plaintiff can surmount the FCA's jurisdictional bar by demonstrating direct and independent knowledge of "*any* essential element of the underlying fraud transaction (*e.g.*, Y)." *Id.* at 657 (emphasis in original). In other words, the plaintiff can establish subject-matter jurisdiction by proving that it is the original source of either the information concerning the alleged misrepresentations or the information indicating that the defendants are all large businesses.[11]

The plaintiff fails to show direct and independent knowledge of either type of information. With respect to the information found in the OIG Report, the plaintiff first argues

---

[10] The court rejects the plaintiff's argument that its *qui tam* claim is not "based upon" information in the OIG Report merely because the Report does not mention actual payments or claims for payment. Pl.'s Opp'n at 19. The FCA's jurisdictional bar precludes suits by "individuals who base *any part of their allegations* on publicly disclosed information." *United States ex rel. Schwedt v. Planning Research Corp., Inc.*, 39 F. Supp. 2d 28, 34 (D.D.C. 1999) (citing *United States ex rel. McKenzie v. BellSouth Telecom., Inc.*, 123 F.3d 935, 940 (6th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998)) (emphasis in original); *see also United States ex rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 552 (10th Cir. 1992) (concluding that a *qui tam* suit "even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions," because to hold otherwise "would impermissibly expand federal jurisdiction by allowing *qui tam* plaintiffs to avoid the more exacting 'original source' requirement simply by asserting an additional count").

[11] Therefore, the defendants' contention that, "to qualify as an 'original source' able to bring a *qui tam* action, the private plaintiff must have first hand, independent knowledge of the misrepresented state of facts as well as the true state of facts," Defs.' Mot. at 17, is a misinterpretation of this circuit's FCA jurisprudence.

that it "voluntarily provided the information prior to any public disclosure, . . . had first-hand knowledge of the information (by reason of [the plaintiff's] performance under its tripartite Letter Contract)," and that its "knowledge does not depend or rely upon the later public disclosures."[12]  Pl.'s Opp'n at 20.  Although the plaintiff did write to the OIG in January 1997 that "several large white firms misrepresented themselves . . . in order to obtain contracts with the [INS]," this vague statement fails to demonstrate that the plaintiff had any knowledge of alleged wrongdoing by the particular defendants.[13]  *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 675 (8th Cir. 2003) (stating that knowledge of fraudulent practices in general is not sufficient to overcome the FCA's jurisdictional bar, and that a plaintiff must demonstrate direct and independent knowledge of the role played by the particular defendants).

Assuming *arguendo* that the plaintiff's letter to the OIG sufficed to show that the plaintiff had knowledge of the defendants' alleged wrongdoings prior to the release of the OIG Report

---

[12]   Curiously, the plaintiff does not make any effort to explain or support this conclusory statement.  The court, however, surmises that the plaintiff is referring to its January 1997 letters to the Department of Justice's Office of the Inspector General ("OIG") and the SBA.  *See* Cooper Decl., Exs. L, M.

[13]   It is also possible that the plaintiff's letters to the OIG and the SBA provided the impetus for the OIG investigation.  Defs.' Mot. at 18.  This fact alone, however, does not assist the plaintiff in meeting the burden of establishing the court's subject-matter jurisdiction.  Although the plaintiff may have communicated vague suspicions of fraudulent practices by unnamed entities, it was the OIG that uncovered, through its own investigations, the identities of the alleged perpetrators and the exact circumstances of their allegedly fraudulent acts.  *Id.*  Therefore, the plaintiff is not the original source of the information at issue.  *United States ex rel. Dhawan v. N.Y. Med. Coll.*, 252 F.3d 118, 121 n.3 (2d Cir. 2001) (remarking that, even if the government would not have performed an audit "*but for* plaintiff's request . . . , this allegation would not suffice to show that they were the source of the core information) (emphasis in original); *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1163 (10th Cir. 1999) (concluding that where "most of the core information contained in the complaint came from [a third party's] independent research and investigation," the plaintiff's claim that it "provided the initial impetus for [the third party's] investigation" did not demonstrate direct and independent knowledge)).

(*i.e.*, that the plaintiff had independent knowledge of the alleged fraud), the letter would still not establish that the plaintiff's knowledge was direct. *See United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 526 (9th Cir. 1998) (reasoning that "the purposes of the [FCA] would not be served by allowing a relator to maintain a *qui tam* suit based on pure speculation or conjecture"). The court, therefore, cannot accept the plaintiff's conclusory and unsupported statement that it is the original source of the information contained in the OIG Report.

In addition, the plaintiff does not argue that it is the original source of the information regarding the size and wealth of the defendant businesses that was disclosed in various media reports.[14] Further, there is no evidence in the record that the plaintiff provided – or could have provided – any media outlets with this information. Because the plaintiff has failed to meet its burden of establishing subject-matter jurisdiction, the court grants the defendants' Rule 12(b)(1) motion to dismiss.[15]

### C. The Court Grants the Defendants' Request for Attorneys' Fees and Expenses

The defendants request that the court award them attorneys' fees and expenses under the FCA's fees provision, 31 U.S.C. § 3730(d)(4).[16] Defs.' Mot. at 28. They argue that the plaintiff's

---

[14] In fact, the plaintiff makes no mention in its opposition of the D.C. Circuit's (and the defendants') use of the "X + Y = Z" formula.

[15] Accordingly, the court will not address the arguments made by the defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

[16] The defendants also argue that they are entitled to sanctions and attorneys' fees under 28 U.S.C. § 1927, which allows a court to "assess attorneys' fees against an attorney who frustrates the progress of judicial proceedings." *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992). Before imposing sanctions under this provision, the court must evaluate whether the attorney's conduct has been "*at least* reckless." *Id.* at 1217 (emphasis in original). The party moving for sanctions and fees bears the burden of showing that opposing counsel acted recklessly. *Healey v. Labgold*, 231 F. Supp. 2d 64, 68 (D.D.C. 2002). Here, the defendants only allege that the plaintiff's claim is frivolous and vexatious, but they do not make any allegations that the plaintiff's attorney acted recklessly.

claims are "untimely and otherwise meritless." *Id.* at 29.  In addition, the defendants assert that the plaintiff added "a new and wholly frivolous unjust enrichment claim for no apparent reason other than to harass [the d]efendants." *Id*.  The plaintiff does not offer any arguments opposing the defendants' request for fees.  Because the plaintiff's complaint is frivolous and vexatious, the court grants the defendants' request for attorneys' fees and expenses.

### 1. Legal Standard for Awarding Attorneys' Fees and Expenses Under Section 3730(d)(4) of the FCA

Section 3730(d)(4) of the FCA provides:

> the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

31 U.S.C. § 3730(d)(4).  In deciding whether to award attorneys' fees and expenses, the court must determine whether the plaintiff's suit falls within any of the three enumerated categories.[17]  Applying the statute, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. Equal Opportunity Employment Comm'n*, 434 U.S. 412, 421-22 (1978) (section 1988 context).

---

[17]  Case law interpreting the attorneys' fees and expenses provision of the FCA is scant at best.  *United States ex rel. Mikes v. Straus*, 98 F. Supp. 2d 517, 527 (S.D.N.Y. 2000).  But, because the FCA's legislative history indicates that "the standard of § 3730(d)(4) is analogous to that used for claims for attorney[s'] fees brought under 42 U.S.C. § 1988 [the Civil Rights Attorney's Fees Awards Act]," section 1988 cases are instructive in determining when awarding such fees is appropriate.  *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1055 (10th Cir. 2004); *see also Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002); *Mikes*, 98 F. Supp. 2d at 527.  In some instances, courts applying the attorneys' fees and expenses provision of the FCA also look to the sanction provision of Federal Rule of Civil Procedure 11, which allows the court to impose sanctions "when a suit is 'interposed for any improper purpose, such as to harass or to cause unnecessary delay[,]" *Herbert*, 1992 U.S. Dist. LEXIS 14063, at *19; *see, e.g.*, *Mikes*, 98 F. Supp. 2d at 527 (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998) (internal citations omitted)).

The court can only base an award of attorneys' fees and expenses "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation"[18]  *Id.*; *see also Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000) (holding that, "a plaintiff should not be assessed his opponent's attorney[s'] fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. . .").

A claim is frivolous if it is utterly lacking in legal merit and evidentiary support.  *United States ex rel. Mikes v. Straus*, 98 F. Supp. 2d 517, 526-27, 528 (S.D.N.Y. 2000) (noting that a claim is not frivolous if the plaintiff produces "some evidence" to support it).  *See also Gerena-Valentin v. Koch*, 739 F.2d 755, 756-57 (2d Cir. 1984) (awarding fees under 42 U.S.C. § 1988 to a prevailing defendant when the plaintiff failed to "produce any evidence whatsoever in support of his retaliation and conspiracy claim").  Evidence of vexatiousness or an intent to harass on the part of a plaintiff includes, but is not limited to, actions that deliberately delay the proceedings, attempts to relitigate a previously decided claim against the same defendant, the raising of new allegations in an effort to circumvent the arguments in a defendant's motion to dismiss, *Herbert*, 1992 U.S. Dist. LEXIS 14063, at *21-22, and the inclusion of counts for which the available evidence "defeat[s] any inference of a false claim."[19]  *Mikes*, 98 F. Supp. 2d at 527.

---

[18]     A district court should review "the entire course of the litigation" in making this determination.  *Grynberg*, 389 F.3d at 1059 (citing *Christiansburg Garment Co. v. Equal Opportunity Employment Comm'n*, 434 U.S. 412, 421-22 (1978)).

[19]     The distinction between vexatious conduct and harassment stems from the intentions of the plaintiff.  Although the word "harassment" suggests bad faith on the part of the plaintiff, "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Christiansburg Garment Co.*, 434 U.S. at 421; *see also Washington Hosp. Ctr. v. Serv. Employees Int'l Union*, 746 F.2d 1503, 1509 (D.C. Cir. 1984) (concluding that a claim can be vexatious "even though [it is not] brought in subjective bad faith").

## 2. The Plaintiff's Complaint is Frivolous and Vexatious

The defendants are "prevailing parties" for FCA purposes in this case even though the court's dismissal is for lack of jurisdiction. *United States ex rel. Stewart v. Fleet Fin. Group*, 1999 U.S. Dist. LEXIS 13624, at *20 (W.D. Mich. 1999), *aff'd*, 229 F.3d 1154 (6th Cir. 2000). The evidence in this case shows that the INS was aware that the defendants were not small and or disadvantaged businesses and offered them advertising and public relations contracts anyway. A claim is frivolous and vexatious if the government's awareness of the circumstances constituting the alleged transgression makes any legal claim of fraud untenable. *Herbert*, 1992 U.S. Dist. LEXIS 14063, at *19, *20 (stating that the government's knowledge and approval of the defendants' use of documents despite possible copyright infringement "negat[es] any claim of fraud"); *see also United States ex rel. Minna Ree Winer Children's Class Trust v. Regions Bank of La.*, 1996 U.S. Dist. LEXIS 7142 at *24 (E.D. La. May 16, 1996) (concluding that the plaintiff's claim was frivolous and vexatious because the government's awareness and approval of the details of the plaintiff's property transactions negated a claim of fraud).

The plaintiff claims that the defendants received orders from the INS "as a result of" their false representations about the size and scope of their businesses. Am. Compl. ¶¶ 2, 15. During the course of the plaintiff's suit against the government, however, the INS explicitly admitted that it "obtained, with the concurrence of SBA, some advertising services from other vendors outside the section 8(a) program" and even named defendant JWT as one such vendor. Defs.' Mot., Ex. D, ¶ 26; Defs.' Mot., Ex. E. ¶ 26; Defs.' Mot., Ex. F ¶ 44; Defs.' Mot., Ex. G ¶ 44. The documents that the plaintiff submits in support of its opposition to the defendants' motion to dismiss include, *inter alia*, a May 1996 message from the INS to the SBA declaring the INS's

intention to meet its advertising requirements by issuing contracts to a non-8(a) business because "numerous 8(a) firms were assessed, with no company possessing the qualifications appropriate for this requirement." Cooper Decl., Ex. H at 426. Even in its January 1997 letter to the OIG, the plaintiff alleged that the defendants' "fraud took place *with the INS'* [sic.] *contract and program people's knowledge*." *Id.*, Ex. L (emphasis added).

The government's decision to award contracts to the defendants, despite its knowledge that the defendants were not small or disadvantaged businesses, negates any claim of fraud against the defendants.[20] The plaintiff examined the above-cited documents and even acknowledged the INS's awareness of the defendants' true business status in its letter to the OIG. Cooper Decl., Ex. L. Nevertheless, it decided to file the present suit, lodging claims that fly in the face of the available evidence. The court therefore concludes that the plaintiff filed a frivolous and vexatious lawsuit and awards the defendants attorneys' fees and expenses.[21]

---

[20] The defendants' statements to the INS employee confirming their small or disadvantaged business status and the designation of the defendants as "Disadvantaged" on the government-issued orders is admittedly curious. Am. Compl., Attach. 2 at 6547; Am. Compl., Attach. 1.

[21] The defendants also argue for the awarding of attorneys' fees and expenses based on the untimeliness of the plaintiff's claim. Because the court has awarded attorneys' fees and expenses on other grounds, however, it declines at this time to decide whether the untimeliness of the plaintiff's claim qualifies it as frivolous, vexatious or for the purpose of harassment within the meaning of the FCA. The court also rejects the defendants' allegation that the plaintiff added a claim of unjust enrichment to its amended complaint for the purpose of harassing the defendants, Defs.' Mot. at 29, because the plaintiff later stipulated to the dismissal of the claim, Stipulation and Order at 2.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss and for attorneys' fees and expenses.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of March, 2006.

<div style="text-align: right;">
RICARDO M. URBINA<br>
United States District Judge
</div>